JAMES C. SWINDLER (Bar No. 6135)
PRINCE, YEATES & GELDZAHLER
3993 Howard Hughes Parkway, Suite 400
Las Vegas, NV 89169
Telephone: (702) 837-1987
Email: jcs @princeyeates.com

DOWNEY BRAND LLC
SALLIE B. ARMSTRONG (Bar No. 1243)
427 West Plumb Lane, Reno, NV 89509
Telephone: (775) 329-5900
Facsimile: (775) 786-5443
Email: reno@downeybrand.com

Attorneys for Nevada State Bank

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>High Sierra Woodworks, LLC,<br><br>Debtor. | Case No. 09-51848-GWZ<br><br>**Chapter 11**<br><br>**MOTION TO PROHIBIT USE OF CASH COLLATERAL, TERMINATE AUTOMATIC STAY, GRANT REPLACEMENT LIEN AND/OR DISMISS CASE**<br><br>Date of Hearing: OST requested for 8/28/09<br>Time of Hearing: 9:30 a.m. |

Nevada State Bank (the "Bank"), through its counsel of record, moves the Court pursuant to 11 U.S.C. §§ 105, 362(d), 363(c)(2), 363(e) and 1112(b) and Fed. R. Bankr. P. 4001 and 9014 for an order (1) prohibiting Debtor from using the Bank's cash collateral, (2) terminating the automatic stay to allow the Bank to take possession of and sell its collateral and to conduct a liquidation sale of such collateral on the Debtor's business premises, (3) granting a replacement lien on all post-petition assets of the Debtor and (4) in the alternative to such replacement lien, dismissing this case with prejudice. These motions are based on the following

Memorandum of Points and Authorities and the accompanying Declaration of Keely Bradshaw (the "Bradshaw Declaration") and Declaration of James C. Swindler.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Facts

In support of this Motion, the Bank respectfully represents as follows:

1.  On or about November 15, 2006, the Bank and High Sierra Woodworks, LLC (the "Debtor") executed and entered into a Business Loan Agreement, a copy of which is attached to the Bradshaw Declaration as Exhibit A. In connection therewith, the Bank made a loan (the "Loan") to the Debtor in the principal amount of $411,000.

2.  As further evidence of the Loan, the Debtor executed and delivered to the Bank on or about November 15, 2006, the U.S. Small Business Administration Note (the "Note"), a copy of which is attached to the Bradshaw Declaration as Exhibit B.

3.  In order to secure its obligations under the Loan and the Note, the Debtor executed and delivered to the Bank on or about November 15, 2006, the Commercial Security Agreement, a copy of which is to the Bradshaw Declaration as Exhibit C.

4.  The Bank perfected its security interest in the collateral (the "Collateral") described in the Commercial Security Agreement by filing with the Nevada Secretary of State on November 30, 2006, a UCC Financing Statement, a copy of which is attached to the Bradshaw Declaration as Exhibit D.

5.  The Debtor has defaulted in the payment of its obligations under the Note in that, among other things, it has failed to make $4,353.67 of the monthly payment of $7,166.49 that came due on November 15, 2008, and has failed to make any portion of any of the monthly payments required in the amount of $6,706.79 that have come due on the 15th day of December, 2008 and on the 15th day of each month from January through July of 2009.

6. The amount owing under the Note includes principal of $364,794.91, interest accrued from November 15, 2008, numerous late fees and attorney fees incurred as a result of the Debtor's defaults and its filing of a petition for relief in this Court under Chapter 11. As of the petition date, the total amount owing was $383,212.82.

7. The Debtor admits in its Schedule D that it has no equity in the Collateral. The Collateral is not necessary for an effective reorganization. The Debtor has no realistic prospect of an effective reorganization.

8. Cause exists for granting relief from the automatic stay in that the Bank's interest in the Collateral is not adequately protected. Among other things, the following facts and circumstances result in the Bank's interest in the Collateral not being adequately protected:

8.1 No payments have been made under the Loan since December 30, 2008, when the Debtor made the payment that came due October 15, 2008 and a portion of the payment due on November 15, 2008;

8.2 The Debtor has failed to segregate proceeds of the Collateral constituting cash collateral, as required by 11 U.S.C. § 363(c)(4);

8.3 The Debtor has used and expended proceeds of the Collateral (in the form of inventory and accounts receivable) constituting cash collateral without the consent of the Bank and without an order of the Court, thereby violating the strict prohibition of 11 U.S.C. § 363(c)(2);

8.4 Portions of the Collateral are depreciating in value with the passage of time;

8.5 The Debtor has failed to insure the Collateral in accordance with the requirements of the Commercial Security Agreement found on page 2 thereof under the heading "Maintenance of Casualty Insurance;"

  8.6  The Debtor has, both before and since filing its Voluntary Petition on June 11, 2009, repeatedly sold inventory constituting part of the Bank's Collateral in violation of the terms of the Commercial Security Agreement (p. 2, "Transactions Involving Collateral"), which does not permit the sale of inventory while the Debtor is in default under the Loan; and

  8.7  The Debtor has been unable to operate its business at a profit for any calendar year period since the inception thereof and does not expect to be able to generate a profit for the period from the petition date (June 11, 2009) through the end of 2009. The Debtor has incurred losses in the operation of its business amounting to $626,000 for 2006, 2007, 2008 and the portion of 2009 that precedes the petition date.

  9.  Further cause exists for granting relief from the automatic stay in that the Debtor has repeatedly disregarded its statutory duties as alleged above. At the same time the Debtor was giving assurances to the Bank that it was not using cash collateral, it was in fact spending tens of thousands of dollars thereof illegally.

  10.  The Collateral includes thousands of items, many of which are small in size and which can best be evaluated by potential buyers if they are kept on display at the Debtor's business premises and offered for bulk sale at that location.

  11.  The Debtor failed to file its monthly reporting report for the period from June 11 through June 30, 2009, when it came due on July 20, 2009. Although the Debtor eventually filed such a report on August 2, 2009, the report was seriously incomplete in that it omitted Bank Statements and an Income Statement. Counsel for the Bank advised the Debtor's counsel of these deficiencies in the report on August 3, 2009, but no further information has been forthcoming.

  12.  There is occurring a substantial or continuing loss to and diminution of the Debtor's estate in that, among other things, the Debtor has incurred and continues to incur

operating losses post-petition even without making rent payments on its business premises, servicing its secured debt, remitting sales tax collections or paying professional fees.

13. There is no reasonable likelihood of rehabilitation of the Debtor inasmuch as it has never operated profitably for a single calendar year, has incurred extensive losses throughout its existence and lacks the ability to change its operations enough to make itself profitable.

14. The Debtor is grossly mismanaging the estate in that, among other things:

14.1 It has repeatedly made post-petition payments of unsecured pre-petition debt without authorization of the Bankruptcy Code or the Court;

14.2 It has used cash collateral for a period of over 60 days in violation of the Bankruptcy Code;

14.3 It falsely represented to the Bank that it was not using cash collateral;

14.4 It gave seriously misleading testimony at the 341 meeting to the effect that it was current on its lease payments when it had made no post-petition lease payments;

14.5 It appears to have borrowed money post-petition from its principal, Lawrence Hughes, without a borrowing order;

14.6 It has given dramatically different financial projections to the United States Trustee's office and to the Bank, projecting sales for the June 11-30, 2009 period of $21,721 in documents given to the former and sales of $82,142 in a document given to the Bank. It has failed by 33% to meet the projected sales figure given to the Bank.

15. The Debtor has failed to maintain appropriate insurance coverage in that it has no coverage against risk of loss by theft, as required by the Bank's loan documents, posing a risk to the Bank and the estate.

16. Dismissal of this case is in the best interests of creditors and the estate in that substantially all of the Debtor's assets are encumbered by the Bank's security interest, and little if any purpose would be served by administering this case under Chapter 7. There would not be sufficient unencumbered assets available to compensate a Chapter 7 trustee or professionals thereof.

## Legal Authorities

Section 363(c)(2) of the Bankruptcy Code provides:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Section 363(e) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

In *In re Casbeer*, 793 F.2d 1436, 1441-1442 (5th Cir. 1986), the court affirmed[1] the district court's decision affirming the bankruptcy court's decision to grant a replacement lien to a secured creditor whose cash collateral was used by the debtor without authorization.

Section 1112(b)(1) of the Bankruptcy Code provides in pertinent part:

> Except as provided in paragraph (2) of this subsection, . . . on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

---

[1] The Fifth Circuit reduced the scope of the replacement lien based on application of Texas law.

-6-

Section 1112(b)(4) defines "cause" to include substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, gross mismanagement, failure to maintain insurance that poses a risk to the estate or the to the public, unauthorized use of cash collateral substantially harmful to one or more creditors, and unexcused failure to satisfy timely any filing or reporting requirement established by the Code or applicable rules.

## Relief Requested

Wherefore, the Bank requests the following relief:

(a) an order prohibiting the Debtor from spending or otherwise using the Bank's cash collateral except in strict compliance with Section 363;

(b) an order terminating the automatic stay to allow the Bank to take possession of the Collateral, to keep inventory on display and to conduct a liquidation sale thereof at the Debtor's premises;

(c) an order granting the Bank a replacement lien on all post-petition assets of the estate to compensate in part for the Debtor's unauthorized use of cash collateral; and

(d) in the alternative to the relief requested in (b) and (c) above, an order dismissing this case with prejudice.

DATED this 12th day of August, 2009

PRINCE, YEATES & GELDZAHLER

By_____/s/_____
James C. Swindler

DOWNEY BRAND LLC

By_____/s/_____
Sallie B. Armstrong

## **§ 362 INFORMATION SHEET**

| | | |
|---|---|---|
| High Sierra Woodworks, LLC | 09-51848-GWZ | |
| DEBTOR | Case No: | MOTION #: |
| Nevada State Bank | CHAPTER: 11 | |
| MOVANT | | |

### Certification of Attempt to Resolve the Matter Without Court Action:

Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(3), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.

Date: Aug. 13, 2009        Signature: _____

Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: Receivables, inventory, equipment, general intangibles
NOTICE SERVED ON: Debtor(s) X ; Debtor's counsel X ; Trustee NA ;
DATE OF SERVICE: _____

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st $383,213 as of petition date | 1st $392,618 as of petition date |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |
| Inventory at liquidation value $88,325; no other current appraisals | Schedules: Inventory $242,860, Receivables $7,242, equipment (not segregated) |

| TERMS of MOVANT'S CONTRACT with the DEBTOR(S):: | DEBTOR'S OFFER of "ADEQUATE PROTECTION" for MOVANT: |
|---|---|
| Amount of Note: $411,000 | .Based on Motion for Authorization to Use Cash Collateral: Replacement lien on post-petition assets, continued operation of Debtor's business and claimed equity cushion based on Bank's third deed of trust on California residence owned by Debtor's principal (with senior liens of $950,000). |
| Interest Rate: Variable--now 5.5% | |
| Duration: 2014 | |
| Payment per Month: now $6,706.79 | |
| Date of Default: Nov. 15, 2008 | |
| Amount in Arrears: $58,008 | |
| Date of Notice of Default: multiple | SPECIAL CIRCUMSTANCES: |
| SPECIAL CIRCUMSTANCES: Debtor cannot operate on a profitable basis, even without debt service. | |
| SUBMITTED BY: James C. Swindler | SUBMITTED BY: _____ |
| SIGNATURE: _____ | SIGNATURE: _____ |

MLS-Sec-362-Inf-12-00.wpd (District of Nevada)                                   "EXHIBIT A"